# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 10, 2013

Lyle W. Cayce
Clerk

No. 12-60840
Summary Calendar

DEEP SOUTH CRANE & RIGGING COMPANY,

Petitioner

v.

SETH D. HARRIS, ACTING SECRETARY, DEPARTMENT OF LABOR,

Respondent

Petition for Review of an Order of the
Occupational Safety and Health Review Commission
No. 09-0240

Before KING, CLEMENT, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Deep South Crane & Rigging Company ("Deep South") petitions for review of an order of the Occupational Safety and Health Review Commission (the "Commission") citing Deep South for two violations of the Occupational Safety and Health Act ("OSH Act") and its implementing regulations after one of Deep South's cranes collapsed. Because substantial evidence supports the Commission's decision, we DENY the petition.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60840

**FACTS AND PROCEEDINGS**

In July 2008, four Deep South employees were killed when one of the company's VersaCrane TC36000 cranes collapsed backwards at a work site in Houston, Texas. The Occupational Safety and Health Association ("OSHA") investigated and determined that the accident occurred when the crane operator, Marion Odom, raised the 420-foot long boom too high and placed too much weight on the backside mast, in what is known as a "backwards overhaul" position, and left it in that position for approximately three hours. It also found that Odom was not qualified to operate the crane by himself, and that the site supervisor, Danny Aydell, was unaware that Odom had placed the crane in a backwards overhaul position because Aydell was standing behind the crane at the time of the accident.

Based on the results of its investigation, OSHA issued Deep South three citations for eleven violations of the OSH Act. These citations were addressed through settlement, vacated upon further administrative review, or affirmed. Deep South seeks review of the decision by the Commission affirming the Administrative Law Judge's affirmance of two of the citation items: (1) a serious violation of the OSH Act's general duty clause, 29 U.S.C. § 654(a)(1), and (2) a repeat violation of 29 C.F.R. § 1926.20(b)(4), the Department of Labor's general safety and health provision requiring an employer to allow only qualified employees to operate machinery.

OSHA issued Deep South the general duty clause violation for exposing its employees to the hazard of being struck by the boom of a crane, because Deep South failed to require Aydell to ensure that Odom was qualified to operate the TC36000. Among other things, Aydell never verified that Odom could read the TC36000 load charts, had taken and passed a written exam on operation of the TC36000, and had satisfactorily completed an operational test on the TC36000.

No. 12-60840

OSHA issued the § 1926.20(b)(4) violation to Deep South for allowing Odom, an unqualified operator, to operate the TC36000. It classified this violation as a repeat violation because it had cited Deep South for a violation of the § 1926.20(b)(4) standard in April 2007. This April 2007 citation became final in February 2008.

## DISCUSSION

Deep South contends in its petition that the Commission's findings that Deep South violated the general duty clause and § 1926.20(b)(4) are not supported by substantial evidence. It also argues that the Commission's finding that the § 1926.20(b)(4) citation item was a repeat violation is not supported by substantial evidence.

### 1. Standard of review

We "review[] the Commission's findings of fact to ensure they are supported by substantial evidence in the record considered as a whole." *Chao v. Occupational Safety & Health Review Comm'n*, 401 F.3d 355, 362 (5th Cir. 2005) (quotation marks and citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619-20 (1966)).

### 2. General duty clause violation

To establish that an employer violated the general duty clause, "the Secretary must demonstrate that (1) a condition or activity in the workplace presented a hazard, (2) the employer or its industry recognized the hazard, (3) the hazard was likely to cause death or serious physical harm, and (4) a feasible and effective means existed to eliminate or materially reduce the hazard." *Otis Elevator Co.*, 21 O.S.H. Cas. (BNA) 2204 (2007). The Secretary also must show that "the employer knew or with the exercise of reasonable diligence could have known of the hazardous condition." *Id.* In this circuit, a supervisor's knowledge

3

is not imputed to his employer where the supervisor's conduct is unforeseeable. *See W.G. Yates & Sons Constr. Co. Inc. v. Occupational Safety & Health Review Comm'n*, 459 F.3d 604, 608-09 (5th Cir. 2006).

Deep South challenges the Commission's finding that its failure to require Aydell to ensure that Odom was qualified to operate the TC36000 presented a hazard. Deep South argues that Odom's experience with the VersaCrane TC28000 and his lattice crawler crane certification, which included written testing, qualified him as an operator-in-training, who, under industry safety standards, could operate the TC36000 "under the direct supervision of a designated, qualified operator," such as Aydell. American Society of Mechanical Engineers ("ASME") B30.5, § 5-3.1.1(a)(2). Deep South notes that Aydell testified that he was in contact with Odom at all times and that Odom "did not make a move without the direction, knowledge, and consent of Aydell." According to Deep South, this contact constitutes "direct supervision" of Odom, so Odom was a qualified operator.

The Secretary counters that substantial evidence showed that Aydell did not ensure that Odom had taken the tests he needed to qualify even as an operator-in-training, and that, in fact, Odom never had taken any practical examination to test his skills on the TC36000. And the Secretary argues that the evidence established that Odom's written testing on the lattice crawler and his operation of the TC28000 did not give him knowledge of or experience with a crane that could be placed in a backwards overhaul position. Moreover, the Secretary points out that even if Odom was a qualified operator-in-training, Aydell testified that he allowed Odom to operate the TC36000 alone while Aydell stood outside in an area from which he could not see that the crane was in an overhaul position. Therefore, the Secretary maintains that there was substantial evidence that Aydell did not directly supervise Odom.

We agree with the Secretary. Substantial evidence supports the Commission's finding that Deep South presented a hazard by failing to require Aydell ensure that Odom was qualified to operate the TC36000. Although Odom had taken tests and had experience on related cranes, the Commission nonetheless could have reasonably concluded that those tests and experience, which did not cover the danger of backwards overhaul, were insufficient to qualify Odom as an operator-in-training on the TC36000. The Commission's finding that Aydell's supervision of Odom's operation of the crane was deficient is also reasonable. Even if Odom told Aydell what he was doing as he operated the crane, Aydell did not make sure that he could see that Odom was doing it correctly. Aydell's failure to do so led the Commission to reasonably conclude that Aydell did not *directly* supervise Odom.

Deep South also disputes the Commission's determination that the violation was foreseeable, since, Deep South argues, it gave Aydell specific instructions to train Odom. The Secretary responds that the evidence shows that, several weeks before the TC36000 was used at the worksite, Deep South orally told Aydell to "familiarize" Odom with the TC36000. Deep South gave Aydell no further instructions; in particular, it did not instruct Aydell to ensure that Odom had passed the written and practical tests that would qualify Odom to operate the crane.

The evidence cited by the Secretary is sufficient to support the Commission's finding that the violation was foreseeable. Deep South's instructions to Aydell were inadequate to make Aydell's failure to ensure that Odom had passed the requisite tests and had the necessary training unforeseeable, because Deep South never told Aydell to check Odom's qualifications. They were also insufficient to make Aydell's failure to directly supervise Odom unforeseeable, because Deep South merely told Aydell to familiarize Odom with the TC36000, not to directly supervise Odom whenever

he was operating the crane. The Commission's decision that the violation was foreseeable by Deep South is supported by substantial evidence.

*3. Section 1926.20(b)(4) violation*

Section 1926.20(b)(4) requires an employer to "permit only those employees qualified by training or experience to operate equipment and machinery." Deep South challenges the Commission's finding that Odom was not qualified by either training or experience to operate the TC36000. Deep South alleges that Odom's certification on the lattice crawler crane qualified him by training, and his operation of the TC28000 crane qualified him by experience, to operate the TC36000. The Secretary replies that this training and experience was insufficient to qualify Odom as a TC36000 operator because of the distinguishing characteristics of the TC36000 crane. The Secretary points to evidence that the lattice crawler certification requirements did not include either testing or training on the risks of backwards overhaul or how to prevent it. The Secretary also notes that Odom had less than a month of experience with the TC28000 crane, and, during that time, the TC28000 operated by Odom was never configured in such a way that it could have been placed in an overhaul position. Moreover, he observes that Deep South's own expert admitted that Odom's experience with the TC28000 served only as a "partial" qualification for operating the TC36000, and that Odom was not qualified by experience to operate the TC36000 without supervision.

The Commission had before it substantial evidence to find that Odom was not a qualified TC36000 operator, and Deep South does not contest the finding that it permitted Odom to operate the crane. The Secretary presented evidence that the TC36000 was significantly different from the cranes that Odom was certified to operate or had operated. And Deep South's expert conceded that these differences required an operator to have different training or experience in order to be qualified to operate the TC36000. The Commission thus

reasonably concluded that Deep South permitted an unqualified operator to operate the TC36000, in violation of § 1926.20(b)(4).

Deep South also challenges the Commission's characterization of this violation as a repeat violation. A violation is repeated if, at the time it occurred, "there was a Commission final order against the same employer for a substantially similar violation." *Bunge Corp. v. Sec'y of Labor*, 638 F.2d 831, 837 (5th Cir. 1981) (quotation marks and citation omitted). The Secretary makes a prima facie showing by establishing that "the prior and present citations are for failure to comply with the same standard." *Id.* An employer "may then rebut a prima facie case involving the same general standard with evidence of the dissimilarity of the conditions and hazards associated with these violations of the same standard." *Id.* (alterations, quotation marks, and citation omitted). "[T]he principal factor to be considered in determining whether a violation is repeated is whether the prior and instant violations resulted in substantially similar hazards." *Stone Container Corp.*, 14 O.S.H. Cas. (BNA) 1757 (1990). For violations of the same specific standard, "rebuttal may be difficult since the two violations almost have to be substantially similar in nature in order to constitute violations of the specific standard." *Bunge Corp.*, 638 F.2d at 837.

OSHA issued Deep South a citation for violating § 1926.20(b)(4) that became final in February 2008, four months before the present incident occurred. The Secretary thus established a prima facie case before the Commission. Deep South attempts to rebut this showing by arguing that, because the prior § 1926.20(b)(4) violation involved a different type of crane that caused a different injury – a hydraulic boom crane that crushed an employee – it was not substantially similar to the present § 1926.20(b)(4) violation. But, as the Commission noted, both violations were caused by the same hazard: in each case, Deep South failed to adequately train a crane operator. There was sufficient evidence for the Commission to reasonably find that, based on the fact

No. 12-60840

that both violations involved the same specific standard and the same hazard, the second violation was a repeat violation.

## CONCLUSION

The Commission's decision was supported by substantial evidence. Deep South's petition is DENIED.